**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SHANTELL PILI, *et al.*,

      **Plaintiffs,**

v.

                                        **Civil Action No. 3:18cv317**

ANILKUMAR PATEL, *et al.*,

      **Defendants.**

### MEMORANDUM OPINION

This matter comes before the Court on two motions: Defendants'[1] Motion to Dismiss First Amended Complaint (the "Second Motion to Dismiss") and Defendants' Motion for Sanctions (collectively with the Second Motion to Dismiss, the "Motions"). (ECF Nos. 28, 36.) Plaintiffs Shantell Pili, Joshua Vaughn, Laio Morris, Valeria Berry, and Akilah Ar-Raheem (collectively, "Plaintiffs") responded in opposition to the Motions. (ECF Nos. 31, 43.) Defendants replied to Plaintiffs' opposition to the Second Motion to Dismiss. (ECF No. 34). Defendants did not file a reply to the Motion for Sanctions, and the time to do so has expired.

On December 11, 2018, the Court held a hearing on the Motions. The matters are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331[2] and 28 U.S.C.

---

[1] The Amended Complaint identifies the following defendants: Anilkumar Patel; Toral Patel; SN Holdings, LLC; Richmond Hotel Management, Inc.; GRM Management, LLC; and Hotels Management, LLC's (collectively, "Defendants"). (*See* Am. Compl., ECF No. 26.)

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Amended Complaint alleges violations of the Fair Labor Standards Act (the "FLSA" or the "Act"), 28 U.S.C. §§ 201 *et seq.*

§ 1367.[3] For the reasons that follow, the Court will deny the Second Motion to Dismiss and the Motion for Sanctions.

## I. Factual and Procedural Background

### A. Procedural Background

Plaintiffs bring this four-count Amended Complaint for allegedly unlawful behavior stemming from Defendants' employment of Plaintiffs. A recitation of all pleadings will contextualize the motions currently before the Court.

The original May 14, 2018 Complaint (the "Original Complaint") named three plaintiffs: Laio Morris, Shantell Pili, and Joshua Vaughn (the "Original Plaintiffs"). (ECF No. 1.) The Original Complaint brought three claims. In Count I, the Original Plaintiffs sought unpaid wages and unpaid overtime pay pursuant to the FLSA. In Count II, the Original Plaintiffs claimed, in the alternative, unpaid wages pursuant to the Virginia Minimum Wage Act. In Count III, Plaintiff Vaughn asserted a claim under the doctrine of *quantum meruit*.[4]

On June 10, 2018, Defendants filed a Motion to Dismiss (the "First Motion to Dismiss"), (ECF No. 14), which Plaintiffs opposed, (ECF No. 17). On June 29, 2018, Plaintiffs filed a

---

[3] The Court exercises supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). The Amended Complaint brings state claims pursuant to the Virginia Minimum Wage Act, Va Code Ann. §§ 40.1-28.8 *et seq.*, as well as a common law claim under the doctrine of *quantum meruit*.

[4] "*Quantum meruit* (translated: 'as much as deserved') is an equitable doctrine premised on the notion that one who benefits from the labor of another should not be unjustly enriched." *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 490–91 (4th Cir. 1992) (citing *Kern v. Freed Co.*, 224 Va. 678 (Va. 1983)).

Notice of Filing the First Amended Complaint, (ECF No. 25), and the Amended Complaint, (ECF No. 26).[5]

The Amended Complaint names five plaintiffs, adding Valeria Berry and Akilah Ar-Raheen to Original Plaintiffs Morris, Pili, and Vaughn. The Amended Complaint includes four causes of action. In Count I, all five Plaintiffs bring an FLSA claim for unpaid wages and unpaid overtime. In Count II, all Plaintiffs, in the alternative, allege violations of the Virginia Minimum Wage Act. In Count III, Plaintiff Vaughn raises a claim pursuant to the doctrine of *quantum meruit*. Finally, in Count IV, Plaintiffs Pili and Vaughn each assert, for the first time, a claim for retaliation pursuant to the FLSA.

On July 19, 2018, Defendants filed the Second Motion to Dismiss. On August 2, 2018, Plaintiffs responded, and on August 8, 2018, Defendants replied. Six days later, on August 14, 2018, Defendants filed the Motion for Sanctions.[6] On August 28, 2018, Plaintiffs opposed the

---

[5] Plaintiffs properly invoked Federal Rule of Civil Procedure 15(a)(1)(B) to amend their Complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)."). Plaintiffs filed their Amended Complaint within twenty-one days after Defendants filed the First Motion to Dismiss.

Defendants argue that Rule 15 "d[oes] not give Plaintiffs a license to *join new parties.*" (Mem. Supp. 2d Mot. Dismiss 8, ECF No. 29.) Defendants instead contend that Rule 21 of the Federal Rules of Civil Procedure governs the joinder of parties.

Case law to the contrary is clear: "a plaintiff has an absolute right to amend [her or] his complaint once before a responsive pleading has been filed and need not seek leave of court to do so." *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010). This absolute right includes the right to add parties via Rule 15, not Rule 21. *Id.* Under Rule 15, parties may add new plaintiffs, defendants, or both. *Produce Alliance, LLC v. Let-Us Produce, Inc.*, No. 2:10cv198, 2010 WL 7504802, at *2 (E.D. Va. Nov. 22, 2010).

[6] In a letter dated July 19, 2018, Counsel for Defendants warned Plaintiffs about the forthcoming Motion for Sanctions, and provided Plaintiffs an opportunity to remedy the allegedly sanctionable behavior, in accordance with the Federal Rules of Civil Procedure. (Jul. 19, 2018 Sanctions Letter, ECF No. 37-2; *see* Fed. R. Civ. P. 11(c)(2).)

Motion for Sanctions. Defendants opted not to reply. On December 11, 2018, the Court held a hearing (the "December 11, 2018 Hearing") on the Motions.

### B. Summary of Compensation-Related Allegations[7] in the Amended Complaint[8]

According to Plaintiffs, Defendants operate the Akaza Hotel[9] in Richmond, Virginia. Although a change in formal ownership occurred during some of the relevant times,[10] Plaintiffs aver that "upon information and belief, the natural persons (including Anilkumar and Toral Patel) associated with ownership (via SN Holdings, LLC) and management of the hotel have remained the same throughout all relevant periods." (Am. Compl. ¶ 16.)

Defendants Anilkumar Patel and Toral Patel (collectively, the "Patels") were "involved in the ownership and management of the Akaza Hotel, the formation of all corporate Defendants in this lawsuit, and exercised the power to hire and fire, controlled [Plaintiffs'] work schedules, and directed Plaintiffs in their work." (*Id.* ¶¶ 20–21.) The Patels also "w[ere] involved in

---

[7] The compensation-related allegations form the basis of Count I (the FLSA compensation claim), Count II (the Virginia minimum wage claim), and Count III (Vaughn's *quantum meruit* claim). The Court summarizes the factual allegations that support Plaintiffs Pili and Vaughn's retaliation claims (Count IV) in the following discussion, Section C.

[8] For purposes of the Second Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Plaintiffs. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[9] The Amended Complaint identifies the hotel property, located at 6531 W. Broad Street, Richmond, Virginia 23230, as "Akaza Hotel of Richmond, Speco Hotels [sic] of Richmond, and Hotel I-64." (Am. Compl. ¶ 15 (brackets in original).) The Court refers to the property as the "Akaza Hotel" or the "Hotel."

[10] Plaintiffs maintain that SN Holdings, LLC; Richmond Hotel Management, Inc.; Anikumar Patel; and Toral Patel "collectively operate" the Akaza Hotel and that GRM Management, LLC, and Hotels Management, LLC, have "also been involved in operating the Akaza Hotel at relevant times." (Am. Compl. ¶¶ 22–23.)

4

establishing the 'Volunteer for Humanitarian Trade Agreement' program[11] through which the

Akaza Hotel recruited desperate people to work without any cash wages at the hotel." (*Id.*)

According to Plaintiffs, Defendants recruit and hire "desperate" workers via online

advertisements. (*Id.* ¶¶ 21, 24.) These workers provided services, including "landscaping,

repairing appliances, cleaning hotel rooms, replacing water-damaged sheetrock, repairing

plumbing issues, examining water damage, replacing framework, replacing tile, painting, making

bookings, checking guests in and out, receiving and processing payments, inspecting rooms for

damage, and other assorted services." (*Id.* ¶ 25.)

---

[11] Plaintiffs add few details in the body of their Amended Complaint about the so-called Volunteer for Humanitarian Trade Agreement program (or the "Program"), but they attach the purported agreements with Defendants that Plaintiffs Pili and Vaughn signed (the "Volunteer for Humanitarian Trade Agreements" or the "Agreements") to the Amended Complaint. (ECF No. 26-1.) The Court may consider the Agreements when ruling on the Rule 12(b)(6) Motion to Dismiss. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("[W]hen a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir.2011))).
    Each Agreement refers to "the hotel" and "the Company" throughout. (*See* Pili Volunteer for Humanitarian Trade Agreement 1, ECF No. 26-1.) The letterhead reads "Hotel Management, LLC," one of the named defendants in this case. (*Id.*) The address identified, 6531 West Broad Street, is that of the Hotel. Oddly, no person or business representative signs the Agreements on behalf of "the hotel" or "the Company." (*Id.*) Instead, only the "volunteers" fill out and sign them. (*Id.*)
    The Agreements undergird many of Plaintiffs' allegations. For example, Pili's Agreement identifies her as a volunteer "help[ing] us [Hotel Management LLC] with general work at the hotel." (Pili Volunteer for Humanitarian Trade Agreement 1.) Pili's Agreement provides that "[i]n consideration for this volunteering effort on your part, we are prepared, in return[,] to volunteer a room to you on a daily basis where the hotel pays for the room rent, utilities, cable TV, internet[,] and garbage." (*Id.*) The Agreement specifies that, should Pili fail to complete her volunteer work "to a satisfactory level," the Hotel will charge for the use of the room at a rate of $500 per week. (*Id.*)
    Finally, despite the previous delineation of obligations and consideration between the parties, language in the Agreement purports to conclude: "In no way or form does this agreement form an employer-employee relationship." (*Id.*)

As compensation, Defendants provided workers with accommodations at the hotel rather than monetary payment. These hotel rooms "were in substandard condition, and many . . . lacked basic utilities and/or had health hazards." (*Id.* ¶ 28.) Plaintiffs also contend that, "[t]o the degree anyone at the hotel kept records, [the Patels], upon information and belief, w[ere] involved in such recordkeeping." (*Id.* ¶¶ 20–21.)

For each Plaintiff, the Amended Complaint details the dates of alleged employment, the alleged hours worked at the Hotel, the tasks undertaken, and the conditions of the accommodations received in exchange for their services. Although the factual allegations differ based on each Plaintiff's experience, the theme is clear: according to Plaintiffs, Defendants required them to perform various hotel tasks,[12] often working over forty hours a week without overtime compensation,[13] in exchange for residing in substandard rooms.[14]

---

[12] Plaintiffs aver that Pili, Morris, and Ar-Raheem worked as front desk clerks; Vaughn completed maintenance and construction projects; and Berry worked as a housekeeper.

[13] For example, Plaintiffs contend that Pili worked 40–53 hours per week, and Berry worked approximately fifty-four hours per week. Plaintiffs also claim that Berry "was often on-call after her normal working hours." (Am. Compl. ¶ 68.)

[14] For instance, Plaintiffs allege that Pili's room "had a broken heating system, even though it was late autumn and winter." (Am. Compl. ¶ 36.) Vaughn's room "had a constant smell of mold and mildew." (*Id.* ¶ 47.) Defendants provided Berry with a room that "had bed bugs and roach infestations and a constant smell of mold and mildew." (*Id.* ¶ 69.) And Ar-Raheem's room "had mold and water damage." (*Id.* ¶ 75.)

## C.   Summary of Retaliation-Related Allegations and Procedural History[15]

On April 20, 2018, prior to filing suit, Counsel for Plaintiffs sent Defendants a Demand Letter marked "For Settlement Purposes Only."[16] (Demand Letter 1, ECF Nos. 37-1, 43-1 (capitalization and bolding altered).) The Demand Letter summarized Pili and Vaughn's claims and invited Defendants to provide "a copy of contemporaneous accounting of [Pili and Vaughn's] hours worked and wages paid." (Demand Letter 2, ECF Nos. 37-1, 43-1.) The Demand Letter also stated: "If we can resolve this case out of court, we will not file the lawsuit." (*Id.* at 2.) Plaintiffs gave Defendants until May 4, 2018 to respond.

When asked for additional time to respond to the Demand Letter, Counsel for Plaintiffs agreed to seven more days, or until May 11, 2018. (Correspondence 8–10, ECF No. 43-1.) After Counsel for Defendants failed to contact Counsel for Plaintiffs by the May 11, 2018 deadline, the Original Plaintiffs filed their Original Complaint on May 14, 2018.

On May 16, 2018, Counsel for Defendants renewed contact with Counsel for Plaintiffs "apologizing for [his] failure to respond . . . by May 11, 2018 and inquiring if they were still amendable to resolving the claim." (Jackson Aff. at 2, ECF No. 37-1.) After further email

---

[15] Two standards of review apply to the retaliation claims. For purposes of the Motion to Dismiss, the Court assumes the well-pleaded factual allegations to be true and views them most favorably to Plaintiffs as the non-moving party. *Matkari*, 7 F.3d at 1134. When assessing the Motion for Sanctions, the Court considers the entire record to determine the outcome, which is reviewed on appeal for abuse of discretion. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir. 1991).

[16] Briefing by both parties on the Motion for Sanctions included copies of some, but seemingly not all, correspondence between Counsel for Plaintiffs and Counsel for Defendants. Additional communication occurred telephonically, which the parties characterize differently. Counsel for both sides filed sworn statements describing their interactions. (*See* Jackson Aff., ECF No. 37-1; Levy-Lavelle Decl., ECF No. 43-1). Further elaboration took place during the December 11, 2018 Hearing. No party disputes the authenticity of the correspondence, and each party has had an opportunity to supplement the record, so the Court considers the evidence when evaluating the Motion for Sanctions. *See, e.g.*, *Brubaker*, 943 F.2d at 1374.

7

exchanges, Counsel for Defendants sent Counsel for Plaintiffs several documents, including two "Reconciliation Sheets." (Pls.' Ex. B ("Pili's Reconciliation Sheet"), ECF No. 26-2; Pls.' Ex. C ("Vaughn's Reconciliation Sheet"), ECF No. 26-3.) Other than Plaintiffs' April 20, 2018 Demand Letter, no email or document from either side—including Defendants—bore a "for settlement only" or similar notation.

The Reconciliation Sheets include notations that Pili and Vaugh owed money to, and committed crimes against, the Hotel. Pili's Reconciliation Sheet indicates that Pili owes Defendants $1,026.25 "'for the fair value of room' less the alleged value of the work that [Pili] performed." (Am. Compl. ¶ 38 (quoting Pili's Reconciliation Sheet 1).) Pili's Reconciliation Sheet also states that Pili stole items from the Hotel (including cash from the front desk), and that she "is Guilty of both Grand Theft And Defrauding the Innkeeper for the sum of $7,526.25." (Pili's Reconciliation Sheet 1 (capitalization in original).) Plaintiffs contend that Pili "never stole items from Defendants and had never before been told that she owed [Defendants] money for the 'fair value of room' at the hotel." (Am. Compl. ¶ 39.) Plaintiffs charge that Defendants made these accusations in retaliation for Pili filing the Original Complaint.[17]

---

[17] Counsel for Defendants strongly challenges this characterization. Suggesting that the scope of his representation was limited to settlement negotiation, Counsel for Defendants swears he informed Counsel for Plaintiffs "that Mr. Patel had requested my firm to see if we could resolve this matter." (Jackson Aff. 1.) Plaintiffs, in response to the Motion for Sanctions, attach a copy of a letter sent by Counsel for Defendant via facsimile, which states only that Defendants authorized Counsel for Defendant "to address" the Demand Letter. (Correspondence 8, ECF No. 43-1.) It includes no qualifying language limiting it to settlement.

During the December 11, 2018 hearing, Counsel for Defendants argued that Plaintiffs knew he possessed only the limited authority to settle the case, meaning that any and all correspondence constituted confidential settlement negotiations. Defense Counsel contended that Plaintiffs' use of the allegedly confidential information, and their refusal to withdraw the documents and retaliation claim, therefore support Defendants' Motion for Sanctions.

The Court finds this argument unpersuasive. Nothing in the written record, and nothing developed during the December 11, 2018 Hearing, could remotely support a finding that

Vaughn's Reconciliation Sheet—sent days after Plaintiffs filed the Original Complaint—evinces similar notations. Vaughn's Reconciliation Sheet notes that Vaughn owed the Hotel $310.00 for the fair value of his room. Vaughn's Reconciliation Sheet indicates that "Vaughn's incompetent work" resulted in $5,700.00 in damages and $250 in repairs. (Vaughn's Reconciliation Sheet 1, ECF No. 26-3.) It further represents that Vaughn "Stole items from the Hotel including Tools, Fridge, [and] Microwave." (*Id.* (capitalization in original).) Finally, as with Pili, an annotation charges that Vaughn "is Guilty of both Grand Theft And Defrauding the Innkeeper for [a different] sum of $6,760.00." (*Id.*) Plaintiffs again contend that Vaughn "never stole any items from Defendants and had never before been told that he owed money for the 'fair value of room' at the [H]otel" beyond the deposit. (Am. Compl. ¶ 56.) Plaintiffs claim that Defendants made these accusations in retaliation for Vaughn filing the Original Complaint.

In response to Defendants' sending the Reconciliation Sheets and other documents, Counsel for Plaintiffs asked Counsel for Defendants to further explain the information in the Reconciliation Sheets, including records showing how Defendants calculated the values cited in both Pili and Vaughn's Reconciliation Sheets. Counsel for Defense did not respond to this request, apparently prioritizing deadlines in this Court instead. Plaintiffs then filed their Amended Complaint, asserting, in Count IV, Pili and Vaughn's FLSA retaliation claims.

## II. Analysis:  Second Motion to Dismiss

Plaintiffs bring this four-count action against Defendants, alleging violations of the FLSA, Virginia state law claims, and the common law doctrine of *quantum meruit*. Defendants move to dismiss all four counts in their Second Motion to Dismiss. The Court finds that Plaintiffs plausibly allege facts in support of their FLSA claims, Counts I and IV. The Court will

---

Plaintiffs actually knew, or should have known, that Counsel for Defendants could only engage in confidential settlement discussions.

exercise supplemental jurisdiction over Count II (the Virginia state law claim) and Count III (the

*quantum meruit* claim) pursuant to 13 U.S.C. § 1367.[18] Accordingly, and for the reasons that

follow, the Court will deny the Second Motion to Dismiss.

**A.    Standard of Review:  Federal Rule of Civil Procedure 12(b)(6)[19]**

Black letter law provides that a plaintiff's well-pleaded allegations are taken as true and

the complaint is viewed in the light most favorable to the plaintiff when a court evaluates a

motion under Fed. R. Civ. P. 12(b)(6).  *Matkari*, 7 F.3d at 1134; *see also Republican Party of*

*N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  This principle applies only to factual

allegations, however, and "a court considering a motion to dismiss can choose to begin by

---

[18] Defendants posit that the Court must dismiss Counts II and III for lack of supplemental subject matter jurisdiction under 28 U.S.C. § 1367.  This argument could only prevail if the Court were to dismiss the FLSA claims that provide federal question jurisdiction under 18 U.S.C. § 1331.  The Court declines to dismiss the FLSA claims, so Counts II and III will remain as well.

[19] Defendants brought the Second Motion to Dismiss pursuant to Rule 12(b)(1), claiming the Court lacks subject matter jurisdiction over the claims because Plaintiffs fail to show, by a preponderance of the evidence, that Defendants meet the $500,000 threshold requirement for enterprise coverage under the FLSA.  But enterprise coverage under the FLSA does not constitute a jurisdictional question.  *See, e.g.*, *Velasquez v. Salsas and Beer Rest., Inc.*, 735 Fed. Appx. 807, 808–809 (4th Cir. 2018) (disagreeing with the district court's "conclusion that enterprise coverage under the FLSA is a jurisdictional requirement," but ultimately affirming the district court's judgment on the basis of its alternative disposition (footnote omitted)); *see also Maravilla v. Ngoc Anh Rest., Ltd.*, No. 1:16cv427, 2016 WL 6821090, at *3 (E.D. Va. Nov. 17, 2016) (stating that courts "have overwhelmingly concluded that coverage is an element of the claim for relief, not a jurisdictional question." (collecting cases)).
    Defendants unpersuasively cite two outlier cases in support of their position that Rule 12(b)(1) applies: *Russell v. Continental Restaurant, Inc.*, 430 F. Supp. 2d 521 (D. Md. 2006) and *Aguilar v. LR Coin Laundromat, Inc.*, No. RDB-11-02352, 2012 WL 1569552 (D. Md. May 2, 2012).  The decisions do not bind this Court, and no court appears to have followed the reasoning in either decision.  *See, e.g.*, *Maravilla*, 2016 WL 6821090, at *3 (calling the decision in *Aguilar* "puzzling" in light of prevailing case law at the time).  As the *Maravilla* Court concluded, the *Russell* and *Aguilar* decisions have "been overtaken by the body of precedent in the District of Maryland that now recognizes that granting a Rule 12(b)(1) motion on the basis of FLSA coverage is improper."  *Id.*  Thus, in the interest of judicial economy, this Court properly construes Defendants' challenge as a Second Motion to Dismiss pursuant to Rule 12(b)(6).

identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Martin*, 980 F.2d at 952 (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).

A complaint containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" cannot survive a Rule 12(b)(6) challenge. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

"A plaintiff is generally permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant." *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015). This allowance is not limitless. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (holding, in the context of a pleading for fraud under Rule 9(b), that "[w]hen a plaintiff sets out allegations on information and belief, he [or she] is representing that he [or she] has a good-faith reason for believing what he [or she] is saying, but acknowledging that his [or her] allegations are 'based on secondhand information that he [or she] believes to be true'") (citing Black's Law Dictionary 783 (7th ed. 1999)).

**B.**     **Plaintiffs Sufficiently Plead that the FLSA Applies**

Plaintiffs bring two counts pursuant to the FLSA. In Count I, Plaintiffs claim that Defendants owe Plaintiffs compensation for the work that Plaintiffs performed for Defendants. In Count IV, Plaintiffs allege that Defendants unlawfully retaliated against Plaintiffs Pili and Vaughn for filing the Original Complaint.

Defendants challenge the applicability of the FLSA on two grounds. First, Defendants posit that the enterprise at issue falls outside of the scope of the FLSA because its gross annual revenue does not meet the $500,000 threshold required for enterprise coverage. Next, Defendants argue that Plaintiffs have failed to plausibly establish an employer-employee relationship between Defendants and each of the Plaintiffs.

Both arguments fail. Plaintiffs plausibly allege facts to support a finding, at this stage, that Defendants' enterprise falls within the scope of the FLSA and that each of the Plaintiffs had an employer-employee relationship with Defendants. Accordingly, the Court will deny the Second Motion to Dismiss.

**1.     Plaintiffs Sufficiently Plead That Defendants Fall Within the Definition of "Enterprise" Within the FLSA**

To recover under the FLSA, a plaintiff may rely on two theories of recovery. First, a plaintiff may demonstrate that the employer constitutes an "enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage") whose "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. §§ 206(a), 207(s)(1)(A)(ii). "Under the FLSA, an 'enterprise' need not be a single business." *Griffin v. Daniel*, 768 F.Supp. 532, 535 (4th Cir. 1991). Alternatively, a plaintiff may allege that the plaintiff has, in her or his capacity as an employee, personally "engaged in commerce or in the production of goods for commerce"

("individual coverage"). *Id.* at § 207(a)(1). The Court concludes that Plaintiffs plausibly allege that Defendants' gross volume of sales made or business done meets the $500,000 threshold,[20] thus establishing enterprise coverage and surviving this Rule 12(b)(6) challenge.

Plaintiffs allege that "[u]pon information and belief, and notwithstanding Defendants' claims to the contrary, Defendants received at least $500,000 in gross revenue in each of 2016 and 2017." (Am. Compl. ¶ 31.) Defendants challenge this assertion as "a conclusory and wholly unsupported claim."[21] (Mem. Supp. 2d Mot. Dismiss 10.) In response, Plaintiffs state: "Based on firsthand knowledge, the Plaintiffs anticipate that discovery . . . will firmly establish that the Defendants enjoyed revenue in excess of $500,000 'annual gross volume of sales or business done' during the relevant time." (Resp. 2d Mot. Dismiss 9.)

---

[20] Because this finding allows the FLSA claims to proceed regardless of whether each plaintiff individually engaged in commerce or the production of goods for commerce, the Court need not address Defendants' alternative arguments that each Plaintiff did not engage in commerce within the scope of the FLSA.

[21] Defendants attach several documents attested to by Defendant Anilkumar Patel in an effort to support their position that "the Akaza Hotel had a gross volume of sales of far less than $500,000 during calendar years 2016 and 2017." (Mem. Supp. 2d Mot. Dismiss 10; *see* Patel Aff., ECF No. 15-1.) The Court cannot consider these documents when ruling on the Second Motion to Dismiss.

Although the Court can, in some circumstances, consider matters outside of the pleadings without converting a motion to dismiss into one for summary judgment, the Court declines to do so here. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (citations omitted) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed.").

Although Defendants proffer what are presumably public tax documents showing gross sales and income for the business entities, they fail to identify any documents regarding Anilkumar *and* Toral Patels' relationship to, and income from, the business entities. Even presuming Plaintiffs would accede to the documents' authenticity, the proffered documents likely do not meet any accepted *Witthohn* exception. Were the Court to consider them, they would not establish the business structure in a manner that would decide the enterprise issue. Especially given Plaintiffs' good-faith assertions that discovery will aid in the decisional process, the Court declines to consider those documents or to convert the Second Motion to Dismiss into one for summary judgment.

Viewing the allegations in the light most favorable to the non-moving party, Plaintiffs' minimal allegation passes muster. Plaintiffs plainly contend that, "[u]pon information and belief," Defendants meet the $500,000 threshold for enterprise coverage to apply. (Am. Compl. ¶ 31.) Because a common enterprise within the FLSA may include multiple entities,[22] the Court finds Plaintiffs' allegation that Defendants meet the $500,000 threshold requirement plausible. *See Griffin*, 768 F.Supp. at 535.

Further, Plaintiffs may plead on information and belief and survive a Rule 12(b)(6) motion to dismiss when the information to support the factual allegations exists within the Defendants' control.[23] *See Ridenour*, 147 F. Supp. 3d at 456. The Court has no difficulty concluding that Defendants possess the relevant information regarding Akaza Hotel's gross volume of sales or business done.

Accordingly, Plaintiffs sufficiently plead that the FLSA applies to Defendants through the enterprise coverage provisions, and the Court will deny the Second Motion to Dismiss brought on this basis.

### 2. Plaintiffs Sufficiently Plead that an Employee-Employer Relationship Exists Between Each Plaintiff and Defendants

A plaintiff must also establish an employer-employee relationship within the meaning of the FLSA to prevail in her or his FLSA suit. *Kerr v. Marshall Uni. Bd. Of Govs.*, 824 F.3d 62,

---

[22] The Complaint names four corporate defendants. In determining whether Defendants meet the $500,000 threshold, the Court will ultimately consider "the related activities performed" by all Defendants. *Griffin*, 768 F.Supp. at 535. It would be premature for the Court to find, at this early stage, that Plaintiffs cannot meet their burden of proof with regard to enterprise coverage.

[23] The fact that Defendants contest this factual allegation does not alter the current analysis. *See Mylan*, 7 F.3d at 1134.

83 (4th Cir. 2016). Plaintiffs abundantly do so here under what is called the Economic Reality Test.[24]

Although the FLSA defines the terms employer,[25] employee,[26] and employ,[27] "there is . . . no definition that solves problems as to the limits of the employer-employee relationship under the Act." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). The Supreme Court of the United States has stated: "The definition of 'employ' is broad." *Id.* Similarly, "[a] broader or more comprehensive coverage of employees ... would be difficult to frame." *Griffin*, 768 F.Supp. at 539 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 362 (1944) (alterations in original)). Courts interpret the term employer broadly to include "those with managerial responsibilities and 'substantial control of the terms and conditions of the work of ... employees.'" *Kerr*, 824 F.3d at 83 (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). The FLSA even applies to informal and loose employment relationships. *See, e.g.*, *Griffin*, 768 F.Supp. at 538–40.

The existence of an employer-employee relationship "does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Rutherford*, 331 U.S. at 730. A

---

[24] The United States Court of Appeals for the Fourth Circuit directs a court to apply the Economic Reality Test when assessing a FLSA claim, which "focuses on whether the worker is 'economically dependent on the business to which [she or] he renders service or is, as a matter of economic [reality], in business for [her- or] himself." *Kerr*, 824 F.3d at 83 (quoting *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (brackets in original)). The FLSA does not apply to "those who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Rutherford*, 331 U.S. at 729–30 (quotation omitted).

[25] The FLSA defines an "employer," in relevant part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

[26] "The term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1).

[27] "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g).

court must consider the "underlying economic realities" in a fact-specific manner. *Id.* at 727

(quoting *Walling v. Rutherford Food Corp.*, 156 F.2d 513, 517 (10th Cir. 1946). For instance, a

court may consider the worker's economic dependency on the alleged employer. *Griffin*, 768

F.Supp. at 539.

Under the Economic Reality Test, a court should consider four factors: "whether the

alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records." *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.*,

172 F.3d 132, 139 (2d Cir. 1999). These factors are not necessarily exhaustive, and a court must

consider the circumstances of the activity as a whole because "no one factor is dispositive." *Id.*

### a. Plaintiffs Sufficiently Satisfy All Aspects of the Economic Reality Test

Plaintiffs plead sufficient facts to show that an employee-employer relationship exists

between each Plaintiff and Defendants within the scope of the FLSA. The Amended Complaint

asserts that each plaintiff worked for the Hotel without receiving monetary compensation.[28] For

each Plaintiff, the Amended Complaint describes the kinds of tasks that Plaintiffs completed for

the benefit of the hotel. These tasks included front desk duties, maintenance duties,

housekeeping duties, and landscaping duties. As compensation, each Plaintiff lived in one of the

Hotel rooms without paying the room rate.

Defendants founder when asserting that Plaintiffs' Amended Complaint does not survive

a motion to dismiss because it fails to properly allege an employer-employee relationship. The

---

[28] Plaintiff Ar-Raheem claims she received monetary payment at the beginning of her working relationship with Defendants, but later ceased receiving monetary payment. The other four Plaintiffs allege that they never received any monetary compensation.

Court will explain why Defendants cannot prevail by addressing each of the four prongs of the Economic Reality Test in turn.

### b. Factor One: Plaintiffs Sufficiently Plead that Defendants Had the Power to Hire and Fire Employees

As the first aspect of assessing whether an employer-employee relationship exists, the Fourth Circuit instructs courts to consider whether the alleged employer had the power to hire or fire the worker. The Amended Complaint alleges that the Patels "exercised the power to hire and fire" Plaintiffs. (Am. Compl. ¶¶ 20, 21.) Further, the Patels purportedly "directed Plaintiffs in their work." *Id.* Plaintiffs also contend that Mr. Patel controlled Plaintiffs' work schedules. The Court, having reviewed the entire Amended Complaint, draws the reasonable inference that the Patels exercised the power to hire and fire Plaintiffs.

First, allegations in the Amended Complaint state generally that Defendants recruited workers using online advertisements.[29] Plaintiffs specifically contend that Vaughn learned about this work opportunity through an online advertisement. Although nothing in the Amended Complaint expressly asserts that each plaintiff learned about the "Volunteer for Humanitarian Trade Agreement" program through these online advertisements, the Court does not hesitate in drawing the reasonable inference that each Plaintiff learned about the opportunity through similar advertisements, meaning that the Patels had the power to hire Plaintiffs.

Second, Plaintiffs aver, with specificity, that "Defendants, by Mr. Patel, offered Mr. Vaughn approximately 20 hours a week of work in exchange for a room at Defendants' hotel."

---

[29] In reply, Defendants belatedly take issue with Plaintiffs' consistent use of the word "Defendants" instead of signaling which of the six named defendants the Amended Complaint specifically refers to. (*See* Reply 2d Mot. Dismiss 5–6, ECF No. 34.) But the Amended Complaint states that the Patels, the only natural persons named in the suit, own and manage the Hotel through the other four corporate defendants. The Amended Complaint does not identify other hotel staff or management. The Court draws the reasonable inference in favor of Plaintiffs that the Patels acted on their own behalf, as well as on behalf of, or as, the corporate entities.

(Am. Compl. ¶ 45.) Taking this allegation as true, this evinces Mr. Patel's authority to hire the workers at the Azaka Hotel. Although no allegation in the Amended Complaint identifies by name who directed each Plaintiff's activities at every juncture, the Court draws the reasonable inference that Defendants entered into the work agreements with each Plaintiff.

Third, Plaintiffs attach two Volunteer for Humanitarian Trade Agreements between Defendants and Plaintiffs Pili and Vaughn, respectively.[30] The Agreements provide support for Plaintiffs' contention that Defendants had the power to hire and fire Plaintiffs. The Volunteer for Humanitarian Trade Agreement between Pili and the Hotel required Pili to "undertake volunteer work to a satisfactory level" or risk both ejection from the compensating room and billing for the stay.[31] (Pili Volunteer for Humanitarian Trade Agreement 1.) This suggests that Defendants, as parties to the Agreement, had the authority to "fire" Plaintiffs, by expelling them from the premises.

The Court concludes that the first prong of the Economic Reality Test, the ability to hire and fire, strongly favors a conclusion that an employer-employee relationship existed between Defendants and each Plaintiff.

---

[30] The Amended Complaint does not attach Volunteer for Humanitarian Trade Agreements for each named Plaintiff. The Court does not consider the lack of other Agreements a basis to dismiss the other Plaintiffs. Plaintiffs allege generally that Defendants used the Volunteer for Humanitarian Trade program to recruit people to work in exchange for living on the Hotel premises rather than money. The Amended Complaint consistently includes facts in support of Plaintiffs' claim that each Plaintiff worked at the hotel in exchange for living at the Hotel rather than for money. That Plaintiffs did not allege that each Plaintiff entered into a similarly worded agreement does not bar their claims.

[31] The fact that the Agreement refers to "volunteer" work rather than employment does not control. *See Rutherford*, 331 U.S. at 729 (concluding that when "the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the workers from the protection of the Act."). Rather, the "underlying economic realities" control. *Id.* at 727 (quotation omitted).

### c. Factor Two: Plaintiffs Sufficiently Plead that Defendants Controlled Plaintiffs' Work Schedules and Conditions of Employment

As to the second factor, the Fourth Circuit instructs courts to consider whether the alleged employer controlled the supposed employee's work schedule and conditions of employment. Plaintiffs flatly claim that that the Patels "directed Plaintiffs in their work." (Am. Compl. ¶¶ 20–21.) Plaintiffs also plausibly allege that Mr. Patel controlled Plaintiffs' work schedules. Although a "formulaic recitation of the elements of a cause of action" does not suffice to survive Rule 12(b)(6) scrutiny, *Twombly*, 550 U.S. at 555, the Court, having reviewed the entire Amended Complaint, draws the reasonable inference that the Patels controlled Plaintiffs' work schedules[32] and conditions of employment.

Plaintiffs plainly allege that they worked for the benefit of the Hotel. Plaintiffs engaged in routine hotel-related tasks, including: maintenance, housekeeping, front desk duties, and other tasks. These types of tasks require assignment to a specific room, area, or time. Because only Defendants, as owners of the Hotel, could reasonably make those determinations, the Court readily infers that Defendants controlled Plaintiffs' work schedules. Indeed, at this stage, when the Court must draw all reasonable factual inferences in favor of Plaintiffs, no other reasonable inference exists.

In addition to assessing control over work assignments under factor two of the Economic Reality Test, a court should also consider whether the supposed employer controlled the alleged

---

[32] For example, as to their work schedules, Plaintiffs assert that Vaughn met "at approximately 8:30 a.m. each workday with Mr. Patel, who would assign him the rooms in which to work for that day." (Am. Compl. ¶ 49.) Plaintiffs add that "Berry was often on-call after her normal working hours." (*Id.* ¶ 68.) The Court makes the reasonable inference that Defendants required Berry to be "on-call," and thus controlled her work schedule. (*Id.*) Neither the Amended Complaint, nor common sense, supports a different conclusion.

employee's conditions of employment. Plaintiffs advance more than adequate facts supporting a finding that Defendants control the conditions of Plaintiffs' employment.

First, Plaintiffs' claims that they lived in substandard rooms support an inference that Plaintiffs lacked control over the conditions of their employment.[33] And Plaintiffs' additional allegations that Defendants sought out "desperate" people to engage in their scheme leave little room for doubt about a lack of control. (Am. Compl. ¶ 20.)

Next, all Plaintiffs aver that they resided at the Hotel in exchange for their work. The Humanitarian for Trade Volunteer Agreements, which require Plaintiffs to perform satisfactory work in order to remain at the Hotel, patently evince Defendants' control over the conditions of employment. Not only do the Agreements lack any indicia that Plaintiffs could control any terms within them, but they also strongly suggest complete dependence of Plaintiffs on Defendants. *See Griffin*, 768 F.Supp. at 539 ("[I]t appears likely that [Plaintiffs] knew [they] must work, or else leave.").[34]

The Court does not hesitate to conclude that Plaintiffs establish the second prong of the Economic Reality Test: control over the worker's schedule or conditions of employment. This,

---

[33] The *Griffin* Court observed that the "squalid" conditions of the housing that the employer provided in exchange for services evinced the employee's lack of control. 768 F.Supp. at 539. The court reasoned that the plaintiff's economic dependency on the defendant "was complete" because "[w]ithout any pay[,] he was in no position [to] seek and rent a room on his own." *Id.* Here, analogously, the Court regards the allegations of substandard living accommodations as weighing in favor of a conclusion that Defendants controlled Plaintiffs' conditions of employment.

[34] In *Griffin,* the Court deemed the fact that the defendant did not pay the plaintiff money, but instead allowed the plaintiff to live on his property, as key to its analysis of control. 768 F.Supp. at 539. That court found that an employer-employee relationship existed between the defendant and the plaintiff in part because the plaintiff's "dependency on [the defendant] was complete." *Id.*

in turn, thoroughly favors finding the existence of an employer-employee relationship in the case at bar.

### d. Factor Three: Plaintiffs Sufficiently Plead that Defendants Controlled Plaintiffs' Rate and Method of Payment

Plaintiffs also plead more than sufficient facts to meet the third prong of the Economic Reality Test: that Defendants controlled each Plaintiffs' rate and method of pay. According to Plaintiffs, the Patels owned and managed the Hotel. Defendants recruited workers through the Volunteer for Humanitarian Trade Program. The Volunteer for Humanitarian Trade Agreement, in turn, evinces a one-sided system: workers fill out a pre-existing form with only their contact information, and without any apparent input into the terms of the Agreement. None of the plaintiffs had an opportunity to negotiate over the type of compensation.

Ar-Raheem's allegations highlight Defendants' control. Plaintiffs aver that Ar-Raheem initially received monetary compensation for her work as a front desk clerk. Then, "in March 2016, Defendants moved Ms. Ar-Raheem to their 'Volunteer for Humanitarian Trade' program." (Am. Compl. ¶ 76.) Especially because Ar-Raheem received no monetary compensation after the switch, Plaintiffs amply allege that Defendants controlled the terms of compensation with regard to Ar-Raheem.

Considering the circumstances about the work activity alleged in the Amended Complaint as a whole—*i.e.*, that the method of pay amounted to providing a room but no monetary compensation—the Court concludes that Plaintiffs allege facts supporting at least the reasonable inference in favor of Plaintiffs that Defendants controlled Plaintiffs' rate and method of pay. *See Rutherford*, 331 U.S. at 730 (Whether an employer-employee relationship exists depends "upon the circumstances of the whole activity.")

### e. Factor Four: Plaintiffs Sufficiently Plead that Defendants Could Have Maintained Plaintiffs' Employment Records

Finally, as to the fourth prong of the Economic Reality Test, Plaintiffs adequately plead facts regarding this one-sided program to support a finding that Defendants could have maintained employment records if they chose to do so. Plaintiffs allege that, "[t]o the degree anyone at the hotel kept records, [the Patels], upon information and belief, w[ere] involved in such recordkeeping." (Am. Compl. ¶¶ 20–21.) Considering the well-pleaded assertions about the three other prongs, the Court concludes that these allegations sufficiently meet the fourth factor of the Economic Reality Test. Given the program Plaintiffs describe, and viewing the circumstances of the activity as a whole, the Court draws the reasonable inference that, as part of this overarching control, Defendants had a duty to maintain Plaintiffs' employment records.

To the extent Defendants failed to maintain proper records in compliance with the FLSA, this cannot excuse them from liability under the FLSA. *See Griffin*, 768 F.Supp. at 538. In *Griffin*, a defendant argued that the FLSA did not apply to him, in part, because the plaintiff could not show that the defendant kept employment records. *Id.* The Court concluded that the defendant could not escape liability by failing to keep records, and then using his "fail[ure] to observe the most rudimentary customs of the employer-employee relationship" to stymie the plaintiff's ability to prove his case. *Id.*

In conclusion, the Court readily finds that Plaintiffs plead ample plausible facts under the Economic Reality Test to survive Defendants' dismissal motion. Plaintiffs plausibly allege that Defendants had the power to hire and fire each Plaintiff; controlled all Plaintiffs' work schedules and conditions of employment; determined Plaintiffs' rate and method of payment; and readily had the ability to maintain employment records. *See Kerr*, 824 F.3d at 83 (quotation omitted). Viewing the circumstances of the activity as a whole, the Court finds that Plaintiffs plausibly

22

plead that an employer-employee relationship existed between Defendants and each Plaintiff.

*See Rutherford*, 331 U.S. at 730.

### C. Plaintiffs Pili and Vaughn Plead Sufficient Facts to Support their Retaliation Claims

In Count IV of the Amended Complaint, Pili and Vaughn allege that Defendants unlawfully retaliated against them in violation of the FLSA. For the reasons stated below, the Court concludes that Plaintiffs Pili and Vaughn have met their burden to plausibly state a claim for retaliation that survives a Rule 12(b)(6) motion to dismiss.

The retaliation provision of the FLSA renders it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). To state a prima facie case of retaliation, a plaintiff "must show that (1) [she or] he engaged in an activity protected by the FLSA; (2) [she or] he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008).

To satisfy the second prong of a prima facie retaliation case, a plaintiff must show that the employer engaged "in an action that would have been materially adverse to a reasonable employee because the employer's actions could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 343 (internal alterations, quotations, and citations omitted). "[A] FLSA retaliation claim may lie for retaliatory acts committed against an ex-employee." *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 753 (E.D. Va 2016) (citing *Darveau*, 515 F.3d at 343). Implied threats of retaliatory adverse action suffice to

establish that the plaintiff suffered adverse action by the employer. *See, e.g., Brach*, 221 F. Supp. 3d at 754.

Plaintiffs Pili and Vaughn satisfy each prong of the analysis to survive this motion to dismiss. First, Pili and Vaughn filed the Original Complaint alleging violations of the FLSA. Defendants do not dispute that the Original Complaint constitutes "any complaint . . . under or related to" the FLSA. 29 U.S.C. § 215(a)(3). Thus, Pili and Vaugh meet the first factor of the retaliation analysis.

Second, Plaintiffs Pili and Vaughn plausibly plead facts that Defendants took adverse action "subsequent to or contemporaneous with" the filing of the Original Complaint. *Darveau*, 515 F.3d at 340. This properly establishes the second prong in assessing the efficacy of a FLSA retaliation claim. Pili and Vaughn allege that, just days after filing the Original Complaint, Counsel for Defendant sent opposing counsel a Reconciliation Sheet for both Pili and Vaughn. The Reconciliation Sheets include notations of charges to Pili and Vaughn for the fair value of the rooms in which they stayed at the Hotel.[35] They also include written allegations that Pili and Vaughn stole items and/or money from the Hotel.[36] Vaughn's Reconciliation Sheet adds a censure stating that "Vaughn's incompetent work" resulted in $5,700.00 in damages and $250 in repairs. (Vaughn's Reconciliation Sheet 1.)

Plaintiffs, in their Amended Complaint, assert that Pili "never stole items from Defendants and had never before been told that she owed [Defendants] money for the 'fair value

---

[35] Pili's Reconciliation Sheet reflects that Pili owes Defendants $1,026.25 "'for the fair value of room' less the alleged value of the work that [Pili] performed." (Am. Compl. ¶ 38 (quoting Pili's Reconciliation Sheet 1).) Vaughn's Reconciliation Sheet notes that Vaughn owes the Hotel $310.00 for the fair value of the room he stayed in.

[36] Notes on Pili's Reconciliation Sheet state that Pili owes Defendants $7,526.25 for theft of property and money. Vaughn's Reconciliation Sheet reflects that Vaughn owes Defendants $6,760.00 for theft of property.

of room' at the hotel." (Am. Compl. ¶ 39.) Plaintiffs also contend Vaughn "never stole any items from Defendants and had never before been told that he owed money for the 'fair value of room' at the [H]otel" beyond the deposit. (Am. Compl. ¶ 56.) Plaintiffs aver that the Reconciliation Sheets "were baseless, and were apparently an attempt to persuade Ms. Pili and Mr. Vaughn to cease proceeding with their lawsuit." (Am. Compl. ¶ 101.)

Although Defendants did not bring a civil counterclaim or file criminal charges against Pili or Vaughn, even implied threats of retaliatory adverse action suffice to establish that the plaintiff suffered adverse action by the employer. *See, e.g.*, *Brach*, 221 F. Supp. 3d at 754 (Text messages stating that the employee risked losing his savings or money in a potential counterclaim constituted adverse employer action.) Viewing the allegations most favorably to Plaintiffs Pili and Vaughn, they adequately demonstrate that Defendants asserted these claims against Pili and Vaughn in retaliation for their filing of the Original Complaint.

Finally, because they invoke the timing of receipt of the Reconciliation Sheets, Plaintiffs plead facts that support a plausible inference that "a causal connection exists between the employee's activity and the employer's adverse action." *Darveau*, 515 F.3d at 340. Plaintiffs contend that Defendants provided the Reconciliation Sheets for the first time shortly after Plaintiffs filed the Original Complaint alleging FLSA violations. According to Plaintiffs, no factual basis exists for Defendants' claims that Pili and Vaughn owe them money for their hotel stay or theft.

Defendants strongly dispute that they produced or provided the Reconciliation Sheets in retaliation for Plaintiffs bringing the Original Complaint, stating "that timing was due only to the fact [that Counsel for Defendant] became involved in multiple trials and was thus unable to gather the information sooner." (Mem. Supp. 2d Mot. Dismiss 3.) Given Rule 12(b)(6)'s

permissive standard, the argument cannot prevail. The Court concludes that Plaintiffs allege sufficient facts to support their claim that Defendants retaliated against Plaintiffs Pili and Vaughn when Counsel for Defendants provided Counsel for Plaintiffs with the Reconciliation Sheets following the filing of the Original Complaint.

D. **The Court Will Deny the Second Motion to Dismiss**

The Court concludes that each of Plaintiffs' causes of action survives scrutiny under the permissive pleading standard Rule 12(b)(6) articulates. First, Plaintiffs plausibly allege facts in support of their claim that Defendants constitute an enterprise with gross revenue of at least $500,000, meaning that the FLSA applies to them. Plaintiffs also plausibly proffer facts in support of their claim that an employer-employee relationship existed between Defendants and each named Plaintiff. Thus, Count I, the FLSA compensation claim, survives the challenge.

In Count IV, Plaintiffs Pili and Vaughn state a claim for FLSA retaliation because the Reconciliation Sheets arrived shortly after they filed their Original Complaint and they included notations that threatened adverse action against them by Defendants.

Counts I and IV establish federal question jurisdiction in this Court. The Court, therefore, will exercise supplemental jurisdiction over Count II (the Virginia state law claim) and Count III (the *quantum meruit* claim) pursuant to 13 U.S.C. § 1367. Because Defendants sought dismissal of Counts II and III premised on the lack of federal question jurisdiction, the Court will deny the Second Motion to Dismiss in its entirety.

### III. Analysis: Motion for Sanctions

On August 14, 2018, Defendants filed the Motion for Sanctions, citing Plaintiffs' addition of the retaliation claims as the basis for sanctions. Defendants bring the Motion for Sanctions on two grounds. First, Defendants contend that Plaintiffs impermissibly rely on

confidential settlement negotiation documents to undergird Count IV. Second, Defendants argue that Plaintiffs' retaliation claims lack a basis in law or fact. The Court, finding these arguments unconvincing, will deny the Motion for Sanctions.

A.    **Legal Standard Applicable to Awarding Rule 11 Sanctions**

Federal Rule of Civil Procedure 11[37] "requires that an attorney conduct a reasonable investigation of the factual and legal basis for his claim before filing." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (citation omitted). "The prefiling investigation must appear objectively reasonable." *Id.* (citation omitted). A complaint fails to meet Rule 11's prefiling factual investigation requirement "whe[n] there is *no* factual basis for a plaintiff's allegations." *Id.* A prefiling investigation fails to meet Rule 11's legal investigation requirement when the complaint has "absolutely no chance of success under the existing precedent." *Id.* (quoting *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987)).

Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11, advisory committee's notes to 1983 amendment. Rather,

---

[37] Rule 11(b) states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11 "attempts to discourage the needless filing of groundless lawsuits." *Cleveland Demolition*, 827 F.2d at 988. Rule 11 simply requires an attorney to "investigate the facts, examine the law, and then decide whether the complaint is justified." *Id.*

### B.     Even if it Pertained, Federal Rule of Evidence 408 Would Not Proscribe the Use of this Evidence to Support the Retaliation Claims

Defendants first contend that Plaintiffs acted improperly because they impermissibly rely on the Reconciliation Sheets to support their retaliation claims. According to Defendants, Counsel for Defendants provided the Reconciliation Sheets to Counsel for Plaintiffs as part of confidential settlement negotiations. Defendants aver that Federal Rule of Evidence 408[38] proscribes the use of the Reconciliation Sheets against Defendants. The argument fails for two reasons.

First, the record does not support Defendants' contention that Defendants provided the Reconciliation Sheets as part of confidential settlement negotiations. Plaintiffs initiated correspondence with Defendants by sending the Demand Letter, which included the prominent disclaimer: "For settlement purposes only." (Demand Letter 1 (capitalization and bolding altered).) But neither party marked any other document with this disclaimer, and neither party appears to have attempted to preserve any kind of confidentiality.

Both Plaintiffs and Defendants attach documents showing written exchanges among Counsel for both Plaintiffs and Defendants following the Demand Letter. No correspondence indicates that Defendants engaged actively, or solely, in settlement negotiations. Not a single document following the Demand Letter contains anything like a "for settlement purposes only"

---

[38] Rule 408 states, in relevant part, that evidence shared during a settlement negotiation "is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408.

disclaimer. And certainly nothing indicates that Plaintiffs unreasonably failed to perceive the exchanges as a confidential settlement negotiation. At most, the correspondence reveals a possible willingness by Plaintiffs to work with Defendants to "resolve this case out of court." (Demand Letter 2.)

In his affidavit, Counsel for Defendant avers that he informed Counsel for Plaintiffs that "Mr. Patel had requested [Counsel for Defendants'] firm to see if we could resolve this matter." (Jackson Aff. 1.) Counsel for Plaintiffs, in his declaration, asserts that Counsel for Defendants stated that Defendants "would be interested in talking about settling the claim in the near future, if possible. . . . However, at no point, either on that call or otherwise, were any settlement offers made or even the possible terms of a settlement discussed." (Levy-Lavelle Decl. 2, ECF No. 43-1.) No evidence contrary to this statement by Plaintiffs' Counsel stands before the Court.

At the December 11, 2018 Hearing, Counsel for Defendants argued that Counsel for Plaintiffs knew or should have known that Defendants authorized him only to engage in settlement discussions, meaning that any correspondence between Counsel constituted confidential settlement negotiations. The record does not support this proposition. Even if a genuine misunderstanding existed between opposing counsel regarding the nature of the correspondence, the Court cannot find that Plaintiffs unreasonably concluded that the exchanges fell outside of the scope of any potential settlement negotiation.

Secondarily, even were the Court to assume that Plaintiffs obtained the Reconciliation Sheets through confidential settlement negotiations, Rule 408 would not apply. Rule 408 only proscribes a party from submitting materials obtained during a settlement negotiation for the purpose of "prov[ing] or disprov[ing]e the validity or amount of a disputed claim." Fed. R. Evid. 408. Defendants concede they provided the Reconciliation Sheets when discussing the Original

Complaint, which did not bring a retaliation claim. Plaintiffs submit the Reconciliation Sheets to support a new claim—the retaliation claim. Rule 408 does not prohibit this use of information obtained during settlement negotiations. *See, e.g., Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir. 1997).

### C.    The Court Will Deny the Motion for Sanctions Because Plaintiffs Conducted a Reasonable Factual and Legal Prefiling Investigation

In the Motion for Sanctions, Defendants allege that Plaintiffs improperly bring their FLSA retaliation claim "without any reasonable basis." (Mem. Supp. Mot. Sanctions 1, ECF No. 37.) Having reviewed the entire record, and concluding that Plaintiffs conducted a reasonable factual and legal prefiling investigation, the Court will deny the Motion for Sanctions.

First, Counsel for Plaintiffs declares that, on receipt of the Reconciliation Sheets that became central to Plaintiffs' FLSA retaliation claim, he investigated the factual basis for Defendants' claims. This included emailing Counsel for Defendants within days, asking for specific additional information to substantiate Defendants' claims. Counsel for Plaintiffs states: "The purpose of the request, in substantial part, was to determine whether or not the allegations were an attempt devoid of factual basis to intimidate Plaintiffs into abandoning their claims for unpaid wages." (*Id.*) Defendants did not respond. Counsel for Plaintiffs also discussed the allegations with Plaintiffs Pili and Vaughn directly. Ultimately, Counsel for Plaintiffs "could find no evidence to support the Defendants' claims, or that these allegations had been made prior to the filing of this action." (*Id.*) Defendants do not contest any of the statements that Counsel for Plaintiff makes in his sworn Declaration.

Based on this Declaration, as well as a review of the entire record and proceedings to date, the Court readily finds that Plaintiffs' conducted a reasonable factual prefiling investigation.

As to a reasonable legal investigation, the Court does not hesitate in concluding that Counsel for Plaintiffs conducted a reasonable legal investigation. Not only do the above actions support such a finding, but the Court also has concluded that Plaintiffs' FLSA retaliation claim survives the Rule 12(b)(6) Second Motion to Dismiss: Plaintiffs Pili and Vaughn plausibly plead that Defendants retaliated against them in violation of the FLSA. Accordingly, Count IV certainly passes muster under Rule 11, which requires even less of the nonmoving party than a Rule 12(b)(6) motion. *See, e.g.*, *Brubaker*, 943 F.2d at 1373. The Court will deny the Motion for Sanctions.

### IV. Conclusion

For the foregoing reasons, the Court will deny the Second Motion to Dismiss and the Motion for Sanctions.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 01/11/19
Richmond, Virginia